UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIT RIVER TRIBE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT, et al.,<br><br>Defendants. | Case No. 19-cv-02002-PJH<br><br>**ORDER GRANTING THE CORPORATE DEFENDANTS' MOTION TO TRANSFER**<br><br>Re: Dkt. No. 34 |

Defendants Calpine Corporation and CPN Telephone Flat, Inc.'s (collectively, the "Corporate Defendants") motion to transfer this action came on for hearing before this court on October 16, 2019. Plaintiffs Pit River Tribe, Native Coalition for Medicine Lake Highlands Defense, Mount Shasta Bioregional Ecology Center, and Medicine Lake Citizens for Quality Environments (collectively, "plaintiffs") appeared through their counsel, Deborah Sivas, and certified law school student Anna Patej of the Mills Legal Clinic at Stanford Law School. Corporate Defendants appeared through their counsel, Andrew Emrich. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the Corporate Defendants' motion to transfer for the following reasons.

**BACKGROUND**

This action is the latest chapter in plaintiffs' decades long dispute with the Department of Interior and the Bureau of Land Management (collectively, the "Federal Defendants"), as well as the Corporate Defendants (together, the "defendants"), involving certain leases for geothermal resources in the Northeastern California. While this court

will detail the background necessary to decide the instant motion, it directs readers to the Ninth Circuit's decisions in Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768 (9th Cir. 2006) ("Pit River I"), as well as Pit River Tribe v. Bureau of Land Mgmt., 793 F.3d 1147 (9th Cir. 2015) and Pit River Tribe v. Bureau of Land Mgmt., 939 F.3d 962 (9th Cir. 2019) (collectively ("Pit River II")), for additional information.

**A.     The Instant Action**

In April 2019, plaintiffs filed their complaint for declaratory and injunctive relief in this court. Dkt. 1. In it, plaintiffs allege three claims under the Geothermal Steam Act, Title 30 U.S.C. § 1001 ("GSA") and brought pursuant to Sections 706(1) and 706(2) of the Administrative Procedures Act, Title 5 U.S.C. 706 ("APA"). Such claims allege the following:

1. The Federal Defendants unlawfully failed to terminate a specific geothermal lease ("Lease CA12372") constituting part of a geothermal reservoir lease unit agreement (the "Glass Mountain Unit Agreement") concerning underground gas resources in the Northeastern California area. Compl. ¶¶ 99-100.
2. The Federal Defendants unlawfully failed to contract or altogether terminate the Glass Mountain Unit Agreement, despite knowing that the Corporate Defendants, who have held rights to such agreement, failed to satisfy their obligations under that agreement. Id. ¶ 103(a)-(c).
3. The Federal Defendants unlawfully failed to contract or altogether eliminate the Glass Mountain Unit Agreement by their failures to satisfy other statutory and regulatory requirements. Id. ¶ 106.

Plaintiffs request, among other forms of relief, an order directing the Federal Defendants to terminate the Lease and Glass Mountain Unit Agreement, as well as an order enjoining any activity by defendants in reliance of Lease CA12372 or the Glass Mountain Unit Agreement.

On August 2, 2019, the Corporate Defendants filed the instant motion to transfer venue from this court to the United States District Court for the Eastern District of

California (the "Eastern District"). Dkt. 34. That court has previously adjudicated two actions between plaintiffs and defendants or, in the case of the Corporate Defendants, their predecessors (which the court will simply refer to as the "Corporate Defendants"). The procedural posture of those actions—<u>Pit River Tribe v. U.S. Forest Service</u> (<u>Pit River I</u>) and <u>Pit River Tribe v. Bureau of Land Mgt.</u> (<u>Pit River II</u>)—is intricate. Only recent decisions by the Eastern District and Ninth Circuit in <u>Pit River II</u> (detailed below) are relevant to this motion.

### B. The Prior Litigation

In <u>Pit River II</u>, plaintiffs initially filed two separate complaints challenging Federal Defendant BLM's May 18, 1998 decision to vacate its lease "extensions" for 26 leases constituting part of the Glass Mountain Unit and instead grant "continuations" for such leases. <u>Pit River II</u>, 793 F.3d at 1153-54. In 2012, the Eastern District (the Hon. Judge Mendez) consolidated the two complaints and plaintiffs agreed to file the operative pleading in <u>Pit River II</u>, plaintiffs' First Amended Complaint ("FAC"). <u>Id.</u> at 1154. In it, plaintiffs alleged violations of the GSA, the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the government's fiduciary trust obligation to Indian tribes. <u>Id.</u> at 1148-1149. At least two paragraphs in that pleading (¶ 107(a)-(b)) alleged claims that would potentially subject the second and third claims here to res judicata. <u>Pit River Tribe v. Bureau of Land Mgmt.</u>, 793 F.3d at 1154 (setting forth the specific allegations of FAC ¶ 107(a)-(e)).

At summary judgment, the Eastern District concluded that plaintiffs waived all claims (including the purportedly similar ones here) *except* for a single claim (FAC ¶ 107(d)) that concerned the 26 nonproducing leases. <u>Pit River II</u>, 793 F.3d at 1154-55 ("The court concluded that Pit River waived all of the claims alleged in Paragraph 107 of the complaint except for the claim in subparagraph (d) that BLM unlawfully continued the 26 unproven leases in May 1998."); <u>Pit River II</u>, 2013 WL 12057469, at *3 n.2 (E.D. Cal. July 30, 2013), <u>rev'd sub nom.</u> 793 F.3d 1147 ("Paragraphs 107 (a), (b), (c), and (e) of the First Amended Complaint assert that BLM previously failed to take various actions

3

1 required by the Geothermal Steam Act. ***However, plaintiffs waived those claims both***
2 ***during the hearing and in their filings.*** During the hearing, plaintiffs explained that
3 those paragraphs are alleged only as facts supporting their claim that the May 18, 1998
4 lease continuation was unlawful, and acknowledged that the statute of limitations
5 precludes relief for those allegations as violations of the Geothermal Steam Act in their
6 own right.") (emphasis added). The exact basis for the Eastern District's waiver
7 conclusion is unclear,[1] although the record shows that the parties executed a March 6,
8 2013 stipulation and proposed order that Judge Mendez ordered on March 7, 2013. That
9 stipulation and order provides the following:

> "The proposed First Amended Complaint includes factual allegations concerning the history of geothermal leasing and proposed development in the Medicine Lake Highlands, but Plaintiffs agree that it only assert [sic] causes of action related to the May 18, 1998 lease extension and to Federal Defendants' alleged failure to provide public records . . ." Dkt. 38-2 at 3 ¶ 2 (citing Dkt. Pit River II, 2:04-cv-00969-JAM-JFM, Dkt. 48 (entered March 8, 2013)).

With respect to that remaining claim under FAC paragraph 107(d), the Eastern District granted defendants' motion for judgment on the pleadings. Pit River II, 793 F.3d at 1155. It reasoned that plaintiffs did not fall within the zone of interests of the GSA's lease-continuation provision, Title 30 U.S.C. §1005(a) and, on that basis, dismissed plaintiffs' remaining NEPA, NHPA, and fiduciary duty claims. Id. at 1155.

On Pit River II's first appeal, the Ninth Circuit reversed the Eastern District's zone of interest conclusion, finding that plaintiffs challenged the defendants conduct under not only Title 30 U.S.C. §1005(a) but also its then-discretionary lease-extension counterpart, § 1005(g). Pit River II, 793 F.3d at 1158. On remand, the Eastern District granted summary judgment in favor of plaintiffs. The Eastern District ruled that Title 30 U.S.C. § 1005(a) (pre-2005 version) did not authorize the Federal Defendants to continue the 26

---

[1] On the "waiver" characterization, the Ninth Circuit commented that plaintiffs "***stipulated*** that it would 'only assert causes of action related to the May 18, 1998 lease extensions and to Federal Defendants' alleged failure to provide public records in response to Plaintiffs' FOIA request." Pit River II, 793 F.3d at 1154.

4

leases for 40 years merely on grounds that they were a part of a unit agreement that contained a single proven lease (Lease CA12372, which is the lease challenged in this action). Pit River II, 939 F.3d at 965.

The Eastern District then "vacated and set aside BLM's May 18, 1998 decision granting the lease continuations, and remanded the proceedings to the agency to determine whether to extend or cancel the twenty-six leases pursuant to the GSA and the implementing regulations in effect as of May 1998." Id. Significantly, in its order, the Eastern District expressly stated that "7. The continuance of Lease CACA 12372 for up to forty years pursuant to 30 U.S.C. § 1005(a) . . . is not affected by this Amended Order." Pit River II, 2017 WL 395479, at *2 (E.D. Cal. Jan. 30, 2017), aff'd sub nom. 939 F.3d 962. In its September 19, 2019 decision, the Ninth Circuit agreed with the Eastern District's interpretation of Title 30 U.S.C. § 1005(a) and affirmed its grant of summary judgment in favor of plaintiffs. Pit River II, 939 F.3d at 975.

**C.    The Land, Parties, and Relevant Agreements**

**1.    The Subject Land**

The Glass Mountain Unit is adjacent to Medicine Lake near the Modoc, Klamath, and Shasta-Trinity National Forests in Northeastern California. Compl. ¶¶ 19, 23. The Glass Mountain Unit is located in Siskiyou County. Id. ¶ 36. Plaintiffs allege that their use of Medicine Lake and its highlands would be affected by the exploration and development of geothermal leases. Id. ¶¶ 9-12.

**2.    The Parties**

Plaintiffs comprise the Pit River tribe and various environmental groups. Id. ¶¶ 9-12. Plaintiff Pit River Tribe is partially located in Siskiyou County. Id. ¶ 9. All plaintiffs allege some subjective interest in Medicine Lake and its highlands, and that such use would be affected by the exploration and development of geothermal leases. Id. ¶¶ 9-12.

The Federal Defendants are responsible for ensuring that the federal geothermal resources at issue are managed in accordance with applicable law. Id. ¶¶ 14-15. Federal Defendant BLM is the federal agency specifically charged with managing the

subsurface geothermal resources within the Glass Mountain Unit. Id. ¶ 14. Federal Defendant BLM also issued Lease CA12372 and the Glass Mountain Unit Agreement and, according to plaintiff, did so from its California office, id., which is located in Sacramento. Plaintiffs also allege that Federal Defendant BLM made other "decisions and communications regarding the Lease, the Glass Mountain Unit, and Unit Agreement originated from BLM's California State Office." Id. Federal Defendant Department of Interior maintains its regional presence in San Francisco, California. Id. ¶ 15.

The Corporate Defendants are for-profit entities. Id. ¶¶ 16-17. The Corporate Defendants hold Lease CA12372, in addition to the other leases composing the Glass Mountain Unit. Id. ¶ 18. The Corporate Defendants reside or operate in a county within the Northern District of California. Id. ¶¶ 16-17.

### 3. Lease CA12372 and the Glass Mountain Unit Agreement

On June 1, 1982, the Federal Defendants issued Lease CA12372 for the exclusive right to drill, extract, produce, remove, and dispose of geothermal resources on the 2,500 acres of federal land within the National Forest in Siskiyou County, California. Id. ¶ 36.

In May 1982, the Federal Defendants approved the Glass Mountain Unit Agreement. Id. ¶ 67. Since June 1, 1982, defendant BLM has approved several expansions of and modifications to the Glass Mountain Unit. Id. Lease CA12372 became a part of the Glass Mountain Unit Agreement that same day. Id. ¶ 70. Since the unit's issuance, the unit operator has relied upon only one of three wells located in the unit, Well No. 31-17, as capable of producing geothermal steam in commercial quantities. Id. ¶ 71. Well No. 31-17 is located on Lease CA 12372. Id. On information and belief, plaintiffs allege that that well has been sealed and has not operated since 1988. Id. ¶ 72. Plaintiffs allege a litany of omissions by the defendants in their required management of the Lease CA12372's resources. Id. ¶¶ 73-77, 99-100.

The Glass Mountain Unit Agreement requires a unit operator to "continue diligent exploration" in the Glass Mountain Unit until discovery of a commercially viable geothermal pool and then to either drill wells or submit acceptable plans of operations

6

until actual production.  Id. ¶ 79.  The agreement also provides that a failure to remedy a default in these requirements within a reasonable time "shall . . . result in automatic termination" of the agreement.  Id. ¶ 80.  Plaintiffs allege at least three specific failures by the Corporate Defendants that would qualify as defaults and were known to the Federal Defendants.  Id. ¶¶ 82, 88-89.  Plaintiffs similarly allege a host of ongoing statutory failures by the Federal Defendants.  Id. ¶¶ 83-85, 90-92, 106.

Presently, the Glass Mountain Unit comprises 32 leases in addition to Lease CA12372.  Id. ¶ 94.[2]  None of those other leases are producing and none maintain any well capable of producing geothermal resources in commercial quantities.  Id.  Of the unit's 32 leases, 26 were declared invalid in Pit River II.  Id. ¶ 95.

## DISCUSSION

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "Before a court may transfer venue under 28 U.S.C. § 1404, it must find that: (i) the action is one that might have been brought in the transferee court and (ii) the convenience of the parties and the interest of justice favor the transfer." Thermolife Int'l, LLC v. Vital Pharm., Inc., 2014 WL 12235190, at *2 (C.D. Cal. Aug. 15, 2014).  Courts maintain "broad discretion to adjudicate motions for transfer on a case-by-case basis." Center for Biological Diversity v. Kempthorne, 2008 WL 453043, at *2 (N.D. Cal. Oct. 10, 2008).

Title 28 U.S.C. § 1404 identifies the following three factors as relevant to a court's transfer determination: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice.  28 U.S.C. §1404(a).  The Ninth Circuit in Jones v. GNC Franchising, Inc., 211 F.3d 495 (9th Cir. 2000) specified additional non-

---

[2] Potentially only 25 now because, according to the Federal Defendants, seven were removed following their August 21, 2017 Glass Mountain Unit Agreement Review Report dated August 21, 2017.  Dkt. 31-1 at 17.

7

1 exhaustive factors that courts may consider when making that determination. In relevant
2 part, such factors include the plaintiff's choice of forum and the location where the
3 relevant agreements were negotiated and executed. Jones, 211 F.3d at 498-99. A court
4 may also consider the relative congestion of each potential forum. Ctr. for Biological
5 Diversity v. Exp.-Imp. Bank of the United States, 2013 WL 5273088, at *4 (N.D. Cal.
6 Sept. 17, 2013) ("The Court may also consider any local interest in the controversy, and
7 the relative court congestion and the time until trial in each forum.").

Lastly, the moving party bears the burden of showing that the action should be
transferred. Exp.-Imp. Bank of the United States, 2013 WL 5273088, at *4 ("The burden
is on the moving party to demonstrate that the action should be transferred.").

**B. Analysis**

The circumstances of this action warrant transfer to the Eastern District. While the court is sensitive to that district's exceptionally heavy caseload, it finds that the interests of justice—including the need to avoid inconsistent judgments as well as Judge Mendez's familiarity with the scope of March 6, 2013 stipulation in Pit River II—are best served by transfer. The court further finds that plaintiffs failed to identify any cognizable convenience factor that counsels maintaining this action in this court.

**1. Plaintiffs Could Have Initiated This Action in The Eastern District**

"In determining whether an action might have been brought in a district," courts examine "whether the action initially could have been commenced in that district." Exp.-Imp. Bank of the United States, 2013 WL 5273088, at *4. Title 28 U.S.C. § 1391(b)(2) provides that "a civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. §1391(b)(2).

Here, plaintiffs could have initiated this action in the Eastern District for two independent reasons. First, this action concerns land in Siskiyou County, Compl. ¶ 36, which is located in the Eastern District, E.D. Cal. Civ. L.R. 120(d). Second, at least two

significant decisions allegedly made by the Federal Defendants—their (1) February 1989 paying well determination and (2) August 2017 review of the Glass Mountain Unit Agreement—occurred in an agency office located in the Eastern District. Dkt. 34-2; id. 31-1. Moreover, plaintiffs "do not dispute that the case might have originally been brought in either the Northern or Eastern District". Dkt. 39-1 at 7. As a result, the Eastern District could have served as a proper venue in the first instance.

**2.  Transfer Would Best Serve the Interests of Justice in This Case**

"The interests of justice refer to those public-interest factors of systemic integrity and fairness," including "whether efficient and expeditious administration of justice would be furthered." Exp.-Imp. Bank of the United States, 2013 WL 5273088, at *8.

**a.  Transfer Would Avoid the Risk of Inconsistent Judgments**

Courts recognize that the interest of justice is advanced where the risk of inconsistent judgments are avoided. Mussetter Distrib., Inc. v. DBI Beverage Inc., 2009 WL 1992356, at *5 (E.D. Cal. July 8, 2009) ("Ultimately, the adjudication of these common questions in a single forum will promote judicial economy, conserve the parties' resources, and avoid inconsistent judgments—all in furtherance of the 'interests of justice.'").

Here, the possibility of inconsistent judgment favors a transfer. The Eastern District in Pit River II "vacated and set aside BLM's May 18, 1998 decision granting the lease continuations, ***and remanded*** the proceedings to the agency to determine whether to extend or cancel the twenty-six leases pursuant to the GSA and the implementing regulations in effect as of May 1998." Pit River II, 939 F.3d at 965 (emphasis added). As of that September 2019 decision, the Federal Defendants had not completed the ordered determination. Id. ("We must first assure ourselves of our jurisdiction to hear this appeal because the district court's order granting summary judgment vacated BLM's 1998 decision letters and remanded to the agency."). As of the date of this order, neither party has provided the court with any notice that the Federal Defendants have completed their review on remand, and it is unclear to the court how much time the Federal Defendants

will take to make such determination.  If this court were to order the Glass Mountain Unit's reduction or termination before the agency determines to extend or cancel the 26 nonproducing leases at issue in Pit River II, then there is a possibility of inconsistent judgments affecting the rights at issue in both actions.

Plaintiffs' first argument to the contrary—that there is "virtually no risk of inconsistent judgments here . . . because the present case challenges a different lease . . . than the 28 other leases at issue in Pit River I and Pit River II," Dkt. 39 at 6—is wrong. As an initial matter, while the court takes no position on whether Lease CA12372 was sufficiently central in Pit River II to trigger claim preclusion, Lease CA12372 played a role in that litigation: it provided the purported basis for the Federal Defendants to extend or continue the other 26 nonproducing leases composing the Glass Mountain Unit.

Plaintiffs' second argument to the contrary—that this action's potential termination of the Glass Mountain Unit Agreement would only affect future options available to defendants under the GSA, Dkt. 39 at 12—still fails to account for the scenario where this court orders Lease CA12372 terminated but the Federal Defendants nonetheless find that the 26 nonproducing leases may be renewed (consistent with the Eastern District and Ninth Circuit's decisions in Pit River II, of course).  If such renewal were tied to the existence of Lease CA12372, then there would be an inconsistency in finally adjudicated rights.  As a result, avoiding the possibility of inconsistent judgments cuts in favor of transfer this case to the Eastern District for more omnibus coordination between this action and Pit River II.

### b. Transfer Would Promote Judicial Efficiency

"Transfer is proper if a like action has been brought by the same plaintiff against the same defendant in another district, or another division of the same district. Wireless Consumers All., Inc. v. T-Mobile USA, Inc., 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003).

Here, transferring this action to the Eastern District would conserve judicial resources.  As detailed above, the litigation history between the parties involving GSA

10

claims concerning the Glass Mountain Unit is extensive. All of it has originated in the Eastern District, beginning with Judge David F. Levi (Pit River I) and then to Judge Mendez (Pit River I and Pit River II).

The court doubts plaintiff's contention that the instant action would not be related to Pit River II. The Eastern District of California's Civil Local Rule 123(a) provides that "[a]n action is related to another action within the meaning of this Rule when: (1) both actions involve the same parties and are based on the same or a similar claim; (2) both actions involve the same property, transaction, or event; . . . or (4) for any other reasons, it would entail substantial duplication of labor if the actions were heard by different Judges or Magistrate Judges." E.D. Cal. Civ. L.R. 123(a).

Plainly, this action and Pit River II both involve the same parties and the same property (the Glass Mountain Unit Agreement as well as its associated land). That alone would seem to warrant relation under the Eastern District's Local Rules. Whether this action involves "the same or a similar claim"—a subject of dispute for res judicata purposes by the Federal Defendants in their motion to dismiss (Dkt. 31)—is a determination best left to Judge Mendez, who ordered the March 6, 2013 stipulation by the parties that is at the heart of their res judicata dispute in this action. While this court could expend significant judicial resources to diligently determine how any claim in this action relates to those considered in Pit River II, the Eastern District of California (particularly, Judge Mendez) is in the best position to efficiently and accurately make that determination. As a result, judicial efficiency concerns favor the transfer.

      **c.  Transfer Would Deter Potential Forum Shopping**

Courts also recognize that the interest of justice is advanced when transfer would prevent forum shopping. Wireless Consumers All., Inc., 2003 WL 22387598 at *5 ("Another related 'interest of justice' factor is the prevention of forum shopping.").

Here, the Corporate Defendants identify a potential motivation for plaintiffs' decision not to file this action in the Eastern District: namely that, if assigned this matter, Judge Mendez would have special knowledge of any preclusive import that the parties'

1 March 6, 2013 stipulation in Pit River II would have upon plaintiffs' claims here. Dkt. 42
2 at 5-6. While plaintiffs did identify a specific non-forum shopping reason for preferring
3 this court to the Eastern District—that their pro bono, student-led counsel would face
4 significant costs having to travel to and from Sacramento, Dkt. 39 at 14-15—such reason
5 is not persuasive given that counsel previously represented plaintiffs in Pit River II and
6 therefore already had a history of dealing with such costs. While the court does not find
7 that plaintiffs attempted to forum shop in the instant action, it concludes that transferring
8 this action to the Eastern District would nonetheless generally deter such behavior.

### 4. Transfer Would Advance the Convenience of the Parties and Witnesses

Here, the convenience of the parties and witnesses cuts in favor of granting the requested transfer. Plaintiff Pit River Tribe actually resides in the Eastern District. Compl. ¶ 9. In their opposition, Corporate Defendant Calpine takes the position that, although it does not reside in the Eastern District, venue there would be more convenient for it. While plaintiffs argue maintaining their suit in this court would convenience ***their counsel***, such convenience is irrelevant. Pralinsky v. Mut. of Omaha Ins., 2008 WL 4532563, at *2 (N.D. Cal. Oct. 9, 2008) ("[C]onvenience of counsel is not considered in ruling on a section 1404(a) transfer motion.").

Separately, as plaintiffs point out, this action will likely be decided on summary judgment and any factual issues will likely be resolved through written discovery. Dkt. 39 at 17 ("The case will almost certainly be decided on cross-motions for summary judgment, without live witness testimony. Any factual questions will likely be resolved through written discovery, the locus of which is not a relevant factor on a motion to transfer"). Given that, the convenience of witnesses cuts neither for nor against transfer. As a result, this factor cuts in favor of transfer.

**5. The Remaining Relevant Factors Do Not Foreclose Transfer**

    **a. Plaintiffs' Choice of Forum Warrants Only Minimal Consideration**

When considering a motion to transfer, courts generally assign "great weight" to a plaintiff's choice of forum. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). However, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or the subject matter," then plaintiffs' choice of forum requires "only minimal consideration." Id.

Here, the court may allow plaintiffs' venue preference minimal consideration. As an initial matter, the spatial area in dispute, the land above the Glass Mountain Unit, is located in the Eastern District. Plaintiffs' claims rely on the theory that defendants failed to take certain action affecting that space. Plaintiffs themselves acknowledge that "***the only factual issue in this case is what, if any, activity has occurred on Lease CA12372 or in the Unit over the last three decades***, an issue that likely will be resolved through written discovery of documents and communications between Calpine's officers in the Northern District and the BLM employees in the Eastern District." Dkt. 39 at 16 (emphasis added). Under plaintiff's theory, then, the operative facts (defendants' unlawful inaction at the subject area)—much less the effects of such alleged unlawful inaction in the subject area—necessarily occur in the Eastern District. As a result, this court owes plaintiffs' selected venue little deference.

    **b. The Location of the Agreements' Issuance Cuts in Favor of Transfer**

Here, plaintiffs do not expressly allege where Lease CA12372 and the Glass Mountain Unit Agreement were negotiated and executed. However, plaintiff does allege that Federal Defendant BLM "issued the Lease and Unit Agreement at issue in this case," and that its "decisions and communications regarding the Lease, the Glass Mountain Unit, and Unit Agreement originated from BLM's California State Office." Compl. ¶ 14. Such agreements were issued in 1982. Id. ¶¶ 26, 66. Based on a purported letter sent

1  by it in 1988, Federal Defendant BLM was located in Sacramento.  Dkt. 34-2.  Given that

2  Sacramento is in the Eastern District, this factor cuts in favor the requested transfer.

### c. The Relative Congestion of the Eastern District Cuts Against Transfer

This court is sensitive to the fact that the Eastern District is one of the most congested district courts across the country.  Parker v. FedEx Nat., Inc., 2010 WL 5113809, at *4 (E.D. Cal. Dec. 9, 2010), report and recommendation adopted sub nom. Parker v. FedEx Nat'l LTL, Inc., 2011 WL 13323369 (E.D. Cal. Jan. 18, 2011) ("However, the weighted caseload per judge is higher in the Eastern District than anywhere else in the country.").  While the Eastern District's caseload and associated congestion certainly cuts against transfer, such a factor is not enough to overcome the other factors which all weight in favor of transfer under the particular circumstances of this case.

## CONCLUSION

For the foregoing reasons, the court GRANTS the Corporate Defendants' motion to transfer.  Consistent with this order, the court TERMINATES the Federal Defendants' motion to dismiss (Dkt. 31) and the Corporate Defendants' conditional partial motion to dismiss (Dkt. 35) without any decision.  The clerk shall transfer this action to the United States District Court for the Eastern District of California.

**IT IS SO ORDERED.**

Dated: November 27, 2019

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge